*Thomas Patterson,* of *Patterson, Crawford, Miller & Arensberg,* for appellee.

PER CURIAM, January 7, 1924:

---

# B. V. D. Co. *v.* Kaufmann & Baer Co.

*Equity — Jurisdiction — Unfair competition in trade — Trademarks—Penalties—Acts of June 20, 1901, P. L. 582, and April 24, 1905, P. L. 302—Accounting—Two innocent parties—Fraud—Injunction—Maxims.*

1. The penalties prescribed by section 4 of the Act of June 20, 1901, P. L. 582, as amended by the Act of April 24, 1905, P. L. 302, cannot be recovered in a proceeding in equity, but only in a court having jurisdiction of an action for a fine or penalty.

2. Where the only proof of unfair competition was in the innocent sale of a few articles manufactured by a third party, an accounting will not be ordered, if the amount of damages sustained is so small as not to warrant the reference to a master to state the account; the maxim de minimis applies.

3. An injunction is properly awarded to prevent further sales in unfair competition, even though a defendant was innocent of any wrongful intent in the sales actually proved.

4. Innocence of a wrongful intent may be shown for the purpose of preventing a claim for damages, but not to defeat an application for an injunction against future injury to the plaintiff.

5. Where one of two innocent parties must suffer loss because of the act of a third, he who clothed the wrongdoer with the power to injure, must himself bear the loss.

Argued October 18, 1923. Appeals, Nos. 169 and 176, Oct. T., 1923, by defendant and plaintiff, from decree of C. P. Allegheny Co., Jan. T., 1921, No. 12, on bill in equity, in case of the B. V. D. Company v. Kaufmann & Baer Co. Before FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ. Affirmed.

Bill for injunction and accounting. Before STONE, J. The opinion of the Supreme Court states the facts.

Decree for an injunction, but not for accounting or for penalties under statute, in opinion by MACFARLANE and REID, JJ., to which STONE, J., dissented. Both defendant and plaintiff appealed.

*Error assigned* by defendant was decree, granting injunction, quoting record.

*Error assigned* by plaintiff was refusal of accounting and allowance of penalties, quoting decree and exception.

*Thomas Patterson,* of *Patterson, Crawford, Miller & Arensberg,* with him *Sachs & Caplan,* for Kaufmann & Baer Co.—The question of fraudulent intent is the sole issue in this case: Elgin Nat. Watch Co. v. Watch Case Co., 179 U. S. 665; Lamont, Corliss & Co. v. Hershey, 140 Fed. Rep. 763; Lawrence Mfg. Co. v. Mfg. Co., 138 U. S. 537.

There is no evidence of fraudulent intent on part of defendant.

That a word may have a technical trade-mark meaning in the trade.itself and yet have a purely descriptive

meaning in the minds of the buying public is recognized in the case of Bayer Co. v. Drug Co., 272 Fed. 505.

Plaintiff is not entitled to injunction: Duplex Printing Press Co. v. Deering, 254 U. S. 443; Scranton Stove Works v. Clark, 255 Pa. 23.

The Pennsylvania trade-mark law has no application to the facts in this case.

Appellant is not entitled to an accounting.

*Joseph Stadtfeld,* with him *Frank I. Schechter,* for the B. V. D. Company.—Under the Act of 1901 as amended by the Act of 1905, the sale and delivery by defendant of goods other than those of complainant on requests or orders for "B. V. D." garments was a violation of complainant's rights: E. T. Fraim Lock Co. v. Shimer, 43 Pa. Superior Ct. 221; McLean v. Fleming, 96 U. S. 245; Saxlehner v. Siegel-Cooper Co., 179 U. S. 42; Portuondo Cigar Mfg. Co. v. Mfg. Co., 222 Pa. 116; Scranton Stove Works v. Clark, 255 Pa. 23.

Irrespective of defendant's denial of fraudulent intent, it is liable for the penalties provided by the Trade-mark Act of June 20, 1901, P. L. 582, and the Amendment of 1905: E. T. Fraim Lock Co. v. Shimer, 43 Pa. Superior Ct. 221.

Plaintiff is entitled to an accounting from defendant: Singer Mfg. Co. v. Mfg. Co., 163 U. S. 169; Standard Cigar Co. v. Goldsmith, 58 Pa. Superior Ct. 33.

Complainant is entitled to an injunction under the admitted facts and findings: Scranton Stove Works v. Clark, 255 Pa. 23; Portuondo Cigar Mfg. Co. v. Cigar Mfg. Co., 222 Pa. 116; Penna. Central Brewing Co. v. Beer Co., 258 Pa. 45; American Clay Mfg. Co. v. Mfg. Co., 198 Pa. 189; Potter v. Osgood, 79 Pa. Superior Ct. 397.

OPINION BY MR. JUSTICE SIMPSON, January 7, 1924:

The B. V. D. Company, a manufacturer of high grade athletic underwear, with an enviable reputation for the

quality and make of its goods, filed a bill in equity against the Kaufmann & Baer Company, one of the large retail department stores in the City of Pittsburgh, alleging unfair competition, and a breach of the Act of June 20, 1901, P. L. 582, as amended by the Act of April 24, 1905, P. L. 302. Defendant demurred, and the court below entered a decree in its favor, but we reversed, holding that, under the broad averments of the bill, "the case is essentially one which should go to final hearing": B. V. D. Co. v. Kaufmann & Baer Co., 272 Pa. 240.

Upon the return of the record, defendant filed its answer, and the issues raised were tried in due course. The chancellor advised a dismissal of the bill, and plaintiff excepted. The court in banc decreed that an injunction should issue, but otherwise adopted the ultimate conclusions of the trial judge. Neither party is satisfied with the decree, and each has appealed,—plaintiff claiming it is entitled also to the statutory penalties and an account, and defendant that an injunction should not have been awarded. A single opinion suffices for the two appeals; they will be decided upon such of the facts as are practically undisputed,—although not actually admitted,—without attempting to consider all the points made in the elaborate arguments of the respective parties.

We held in United Drug Co. v. Kovacs, 279 Pa. 132, that the statutory penalties, provided for in section 4 of the Act of 1901, cannot be recovered in equity, and there is no necessity to repeat what we there said.

Nor do we see any basis for plaintiff's claim that an accounting should have been ordered. If this was a suit against a manufacturer, who broadcasted goods which imitated plaintiffs, or were so put up or marked as to mislead purchasers, an entirely different question would arise; but nothing of that kind appears here. The complaint simply is that, in eleven instances, the employees of this retailer, when asked for B. V. D. underwear, sold

and delivered those of other manufacturers. We are convinced that each of these sales was innocently made, partly because defendant's salespeople erroneously believed the initials B. V. D. designated a particular character of underwear, rather than a specific make, and partly because of the facts hereinafter set forth. Any other conclusion than that of innocence, would convict them of conduct which would subject them to the risk of discharge (since they were directed never to make substitutions, but always to give to customers the exact goods asked for), without there being any possibility of individual gain to them.

The total purchase price received on the sale of those eleven articles, was $11.79, instead of $22, which would have been the amount paid had an equal number of suits of plaintiff's underwear been sold to and paid for by the same customers. Every such sale was in fact made to an agent of plaintiff's who tendered in payment, not the amount he knew was the purchase price of plaintiff's goods, but of other underwear which defendant had advertised to be sold at a less price, and which actually had on them markings clearly showing they were manufactured by other concerns. Under such circumstances, it was but natural that the salespeople should think that the purchasers desired the goods for which they tendered the exact purchase price, and not other goods, which were only sold at a different price. So far as appears, no one else asked for "B. V. D." underwear; and, in all probability, owing to the numerous and necessarily hurried sales made in defendant's busy store, no other such mistaken deliveries are likely ever to be known, even if they were made. There is no proof, or averment in plaintiff's brief, that others can be shown. The question, therefore, is: Ought a chancellor to award an accounting, under such circumstances? We think not. As shown above, the profits would have to be calculated on only $11.79 of actual sales, or $22 of possible

ones; to such a situation the maxim de minimis is applicable.

This is, in substance, the conclusion reached in Ludington Novelty Co. v. Leonard, 127 Fed. 155, and G. & C. Merriam Co. v. Saalfield, 198 Fed. 369, in each of which it is said that if there is no reasonable theory upon which a substantial recovery can be based, an account will not be ordered. In 26 R. C. L. 899, the rule is stated thus: "If the trial judge finds that the plaintiff has not sustained enough damages from the defendant's misconduct to warrant a reference to the master, such reference may be refused. The smallness of the claim is a sufficient ground for refusing to exercise jurisdiction in equity." In the present instance, the total value of the goods shown to have been sold in unfair competition, much less the profits on them, would not be sufficient to cover even the cost of the first meeting before a master.

Nor can we agree with defendant's complaint that an injunction should not have been awarded. As already stated, in eleven instances, when plaintiff's undergarments were requested, defendant's employees furnished those of other manufacturers. It is true this was done innocently. It would hardly be doubted, however, but that an injunction would properly be awarded against a defendant, who had personally made sales under such circumstances, even though he had no intention of wronging the plaintiff. That they were made by defendant's employees, who were in fact authorized to and did act for it in the particular sales, cannot change this conclusion. If it did, then any one having a large number of employees could readily escape liability for acts done in the course of their employment; and corporations, which can only act by agents, would always escape, unless there was express authority, or a course of conduct so long continued as to give rise to the conclusion that there was knowledge and ratification. If it be thought that this results in hardship to defendant, it may be answered that any other conclusion would cause hard-

ship to plaintiff; and the case is, therefore, a typical one for the application of the principle that where one of two innocent parties must suffer loss by the act of a third, he who clothed the wrongdoer with the power to injure, must himself bear the loss: Pennsylvania R. R. Co.'s App., 86 Pa. 80; Gurdus v. Phila. National Bank, 273 Pa. 110.

Many cases hold that where such a wrong has been done, innocent intention is not a defense to the application for an injunction. It is sufficient to refer to Scranton Stove Works v. Clark, 255 Pa. 23; Penna. Central Brewing Co. v. Anthracite Beer Co., 258 Pa. 45; and Charles H. Elliott Co. v. Skillkrafters Inc., 271 Pa. 185, in the next to last of which we said, at page 50: "If the effect be to injure plaintiff, the fact that defendant had no fraudulent intent is no defense." Elgin National Watch Co. v. Illinois Watch Case Co., 179 U. S. 665, much relied on by defendant, is not antagonistic to the conclusion stated; for, as there said, (page 674): "If a plaintiff has the absolute right to the use of a particular word or words as a trade-mark, then, if an infringement is shown, the wrongful or fraudulent intent is presumed, and although it may be rebutted in exemption of damages, the further violation of the right of property will nevertheless be restrained." True, that was a technical trade-mark case, but the principles pertinent to that class of cases, apply also to those of unfair trade competition.: Scranton Stove Works v. Clark, supra.

Nor are we impressed with defendant's contention that, since it had not infringed during a period of two years before the trial, and there was no proof it intended to do so in the future, an injunction should not have been awarded. The date referred to only carries us back to a couple of months before bill filed, and a cessation, under that stress, does not, of itself, compel the belief that the future is secure from repetition of the wrong done; especially as plaintiff cannot know de-

fendant's employees will not disobey orders again, exactly as they are said to have done in making the eleven sales of which complaint is specifically made. Defendant, and not plaintiff, must run this risk. Moreover, the above quotation from Elgin National Watch Co. v. Illinois Watch Case Company, supra, answers the specious argument made on this point, as does also our opinion in Scranton Stove Works v. Clark, supra. It is unnecessary to pursue the subject further; to those still doubting, the text of 38 Cyc. 902, and the cases cited in support of it, will furnish profitable reading.

The decree of the court below is affirmed, and the two appeals are dismissed at the costs of the respective appellants.